ALIMENTA (U.S.A.), INC., Plaintiff,

v.

Larry R. STAUFFER, West Texas Cottonseed Products, Inc., Amarillo Agri-Products Export, Inc., Lisa Voyles, Jim Moore, a/k/a Jimmy J. Moore and Jimmy Jack Moore, Jerry Hayes and Brazos Valley Industries, Inc., Defendants.

WY–TEX LIVESTOCK, INC., Plaintiff,

v.

The FIRST NATIONAL BANK OF ATLANTA, Defendant,

v.

ALIMENTA (U.S.A.), INC., Third-Party Defendant.

SOFICO, INC., Plaintiff,

v.

ALIMENTA (U.S.A.), INC., Defendant and Third-Party Plaintiff,

v.

Larry R. STAUFFER, Third-Party Defendant.

Civ. A. Nos. C81–251A, C81–1385A and C82–0855A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 6, 1984.

Vickie Ciufo, Houston, Tex., for Alimenta (U.S.A.), Inc. in Civ. A. No. C81–251A.

Larry Stauffer, Taylor, Tex., pro se.

Stephen M. Collins, Alston & Bird, Atlanta, Ga., John T. Huffaker, Gibson, Ochsner & Adkins, Amarillo, Tex., for Wy-Tex-Livestock, Inc., Agri Products Export, Inc. and Jerry Hayes.

Marilyn D. Britwar, Atlanta, Ga., for First Nat'l Bank.

John G. Parker, W. Lyman Dillon, Hansell, Post, Brandon & Dorsey, Atlanta, Ga., for Alimenta (USA) Inc. in Civ. A. No. C81–1385A.

C.L. Wagner Jr., Atlanta, Ga., C. Bradford Foster, III, Memphis, Tenn., for Sofico, Inc.

## ORDER

ROBERT H. HALL, District Judge.

Presently pending in this action is plaintiff Alimenta (U.S.A.), Inc.'s ("Alimenta's") motion in limine. Alimenta seeks an Order excluding from evidence

any testimony, documents, or other evidence relating to the Fifth Defense asserted by defendants Wy-Tex Livestock, Inc., Agri-Products, Export, Inc., and Jerry Hayes (collectively, the "Wy-Tex defendants") that any damage suffered by

Alimenta resulted from Alimenta's alleged negligence in failing to review and monitor properly the transactions involved in this action, in failing to supervise the activities of defendant Larry Stauffer, and in failing to keep adequate business records.

Within the scope of the evidence sought to be excluded is a written report prepared by Price Waterhouse & Co. for Alimenta.

The motion in limine is based on the grounds that: (1) any such evidence is irrelevant to any cognizable defense to this action; (2) even if such evidence were otherwise relevant, the Price Waterhouse report should be excluded under Fed.R.Evid. 407; and (3) even if such evidence is otherwise relevant, and even if the Price Waterhouse Report is not excluded under Fed.R. Evid. 407, the report should be excluded under Fed.R.Evid. 403. The court addresses each argument seriatim following a review of the facts relevant to disposition of the motion in limine.

## FACTS

This case concerns cash commodities trading (as opposed to futures) and principally involves trading in cottonseed oil and meal. Alimenta's action revolves around the activities of Larry Stauffer, who was employed by Alimenta from July 1, 1979, through December 31, 1980. Throughout that period, Stauffer had formal ties with all of the defendants except Wy-Tex Livestock, Inc. ("Wy-Tex"). At that same time, however, Stauffer was linked to Wy-Tex through common ownership of defendant Amarillo Agri-Products Export, Inc. ("Agri-Products") and by virtue of a longstanding business and personal relationship with defendant Jerry Hayes, the Vice President and General Manager of Wy-Tex.

Alimenta claims that the defendants assisted Stauffer and conspired with him to breach his fiduciary duties and to defraud Alimenta while Stauffer was serving as Alimenta's principal trader in cottonseed commodities. Alimenta contends that Stauffer, with the knowledge, consent, and active participation of the other defendants, but unknown to Alimenta, set up and managed a competing commodities organization, known as West Texas Cottonseed Products, Inc. ("WTCSP"), and arranged trades between Alimenta and that organization on terms disadvantageous to Alimenta. In addition, Alimenta contends that Stauffer arranged trades with Wy-Tex and Agri-Products, both of which had direct or indirect ties to WTCSP and whose trading activities with Alimenta through Stauffer worked greatly to their benefit. In short, Alimenta contends that Stauffer acted as a "double agent", without Alimenta's knowledge, and in concert with his co-defendants betrayed Alimenta's trust.

The Wy-Tex defendants assert as their Fifth Defense that:

Without waiver of any of the above and foregoing responses, Defendants state that to the extent, if any, to which Alimenta has been damaged through the execution of any business transactions with Defendants, or any other entities, and in the event any such transactions are not simply due to bad business judgment on the part of Alimenta, that Alimenta was negligent in failing to properly review such transactions, in failing to properly monitor the performance of such transactions, in failing to supervise the activities of Larry Stauffer and in failing to keep reasonable and proper business records.

Alimenta expects the Wy-Tex defendants to examine witnesses and introduce evidence at trial in support of this defense, including, in particular, a report prepared by Price Waterhouse & Co. which made certain recommendations regarding Alimenta's trading practices and procedures subsequent to the actions of the defendants which allegedly defrauded Alimenta. The Price Waterhouse report consists of a three-page introductory letter to Alimenta's President, Mourad Y. Bebawi, followed by twenty-five pages of text consisting of fifty separate recommendations. It is loosely organized into eight topics: general, commodity contract administration, accounts payable and cash disbursements, cash, sales and accounts receivable, payroll and employee benefits, data processing,

and inventories. The fifty recommendations deal with such diverse topics as job descriptions, weekly meetings of department heads, file maintenance procedures, billing of third parties, cash deposits, foreign bank accounts, personnel policies and evaluation, and written instructions for training data processing personnel.

## DISCUSSION

A. *Availability of negligence or lack of diligence as an affirmative defense to Alimenta's conspiracy to defraud claim*

As the Wy-Tex defendants' Fifth Defense can be read to assert a type of "contributory negligence" defense to Alimenta's conspiracy to defraud claim, the first question presented by Alimenta's motion in limine is whether Georgia law recognizes as a defense to a conspiracy to defraud claim negligence or lack of diligence on the part of the allegedly defrauded party where the allegedly defrauded party had a fiduciary relationship with one of the alleged conspirators during the time period in question.

Alimenta argues that "it is well-established under Georgia law that the usual rule that a party must use reasonable diligence to anticipate and discover fraud is not applicable to cases involving [confidential] relationships, including, of course, the relationship of principal and agent...." (memorandum in support of motion in limine, pp. 5–6), and that the "confidential relationship exception" extends to claims of conspiratorial fraud (reply brief in support of motion in limine, pp. 9–13).

The Wy-Tex defendants, on the other hand, argue that: (1) negligence or lack of diligence *is* a defense to fiduciary fraud under Georgia law (response of Wy-Tex defendants to motion in limine, pp. 26–29) and is a question for the jury (Wy-Tex defendants' response, pp. 29–31); (2) alternatively, even if negligence or lack of diligence is not a defense to fiduciary fraud, there is no evidence that a fiduciary relationship existed between Alimenta and the Wy-Tex defendants and Alimenta has not yet proved the alleged conspiracy (Wy-Tex defendants' response, pp. 31–38); and (3)

even if the "confidential relationship exception" exists and applies to conspiratorial fraud, the exception does not completely vitiate the duty to exercise diligence, but merely lessens the duty (Wy-Tex defendants' response, pp. 38–40).

Alimenta and the Wy-Tex defendants present two obviously divergent interpretations of Georgia law regarding the role of negligence and lack of diligence in a fraud conspiracy claim involving a fiduciary relationship between the allegedly defrauded party and one of the alleged conspirators. The divergence is understandable considering the case law applicable to this issue. However, regardless of the inconsistencies in and ambiguities arising from that case law, it is this court's responsibility to determine to the best of its ability how the Georgia courts would rule on the question before the court. With that qualified preface, the court finds, after carefully considering the relevant case authority, that in Georgia negligence and/or lack of diligence is *not* an affirmative defense to a fraud conspiracy claim where one of the alleged conspirators had a fiduciary relationship with the allegedly defrauded party during the relevant time period.

The court begins its analysis with a discussion of *Crosby v. Rogers,* 197 Ga. 616, 30 S.E.2d 248 (1944). In that case, the jury had returned a verdict for the plaintiff on a fraud claim brought against plaintiff's partner. The defendant appealed essentially on the ground that the plaintiff had the opportunity to discover and prevent the fraud and was "estopped" from recovering on that fraud. *Id.* at 622, 30 S.E.2d 248. The Georgia Supreme Court rejected that argument, saying "[the] argument ... might be potent [except for] the fact that the parties, being partners, stood in a confidential relationship to each other.... Hence, because of this relationship, the [plaintiff] was justified in relying upon his partner, the defendant, and because of this reliance, he was justified in [not discovering the fraud]." *Id.* at 622–23, 30 S.E.2d 248.

The *Crosby* case effectively held that where there is a fiduciary relationship be-

tween two parties, there is no duty to watch for fraud. This rule was stated more directly in a case which followed *Crosby* by two years, *Johnson v. Bogdis,* 205 Ga. 535, 54 S.E.2d 620 (1949). In *Johnson,* legatees under a will sued on grounds of fraud to set aside a judgment awarding a year's support to the decedent's wife. The court rejected the wife's defense that the plaintiffs were barred by their own negligence in failing to discover the alleged fraud on the ground that a confidential relationship existed between the wife, as executrix of her husband's will, and the plaintiffs/legatees:

> There is no merit in the contention that the plaintiffs are barred by their own negligence.... There being between the parties a relationship of trust and confidence, no duty rested upon the plaintiffs to anticipate and watch for fraud. They should not be required to presume that one occupying a confidential relationship to them would perpetuate upon them a fraud. The same degree of diligence in detecting fraud is not required where the parties are dealing at arm's length.

*Id.* at 541, 54 S.E.2d 620. *Accord Lewis v. Lewis,* 228 Ga. 703, 187 S.E.2d 872, (1972) (rule that equity will not set aside judgment entered by fraud if complaining party could have prevented its entry by due diligence " 'is not applicable where there is a confidential or fiduciary relation between the parties; in such a case the law requires the utmost good faith, and the parties are not required to anticipate or watch for fraud.' "); *Hogg v. Hogg,* 206 Ga. 691, 58 S.E.2d 403 (1950) (same as *Lewis* ).

The Georgia Supreme Court subsequently adopted the same rule in the principal-agent context. In *Harrison v. Harrison,* 214 Ga. 393, 105 S.E.2d 214 (1958), the plaintiff, a widow and an executrix of her husband's estate, sued the defendant for defrauding both the estate and the plaintiff herself. The plaintiff alleged that the defendant was an agent of the executors to the estate and also her own agent in her individual capacity. Because of the fiduciary nature of the agency relationship, the court rejected the defendant's contention that the plaintiff was barred from recovery by her failure to discover and prevent the fraud by reading the defrauding documents:

> Because of [the agency relationship], the [plaintiff] was justified in relying upon the representations of her agent.... The numerous decisions cited ... to the effect that a party who can read must read, and that fraud which will relieve a party who can read must be such as prevents him from reading, apply to situations where the parties are dealing with each other at arm's length, and have no application to a situation such as that disclosed by the present petition, where the confidential and fiduciary relation of principal and agent is involved.

*Id.* at 393–94, 105 S.E.2d 214.

Based on *Crosby, Johnson,* and *Harrison,* the court finds that in Georgia, negligence or lack of diligence is not a defense to fiduciary fraud, including fraud committed by an agent upon a principal. In so ruling, the court necessarily rejects the clear implications of the former Fifth Circuit's decision in *Hannah v. Belger,* 436 F.2d 96 (5th Cir.1971), heavily relied on by the Wy-Tex defendants.

In *Hannah,* the court considered a diversity action involving allegations of fraud and conspiracy to defraud. Plaintiffs had alleged that they were defrauded by a conspiracy between a co-investor in a business venture and the banker who arranged a line of credit for the defendant co-investor. A jury verdict was returned against the defendants. The Fifth Circuit reversed the judgment of the trial court reflecting that verdict on the ground that plaintiffs failed to protect their own interest and could not recover:

> In Georgia one who fails to investigate or use ordinary care to verify a statement made by another may not recover even if the statement is later found to be an intentional misrepresentation and fraud is proven.... In the instant case it is perfectly plain that the plaintiffs made no attempt to verify the capital investment allegedly made by [the defendant co-investor]. They made no attempt to exercise even the most perfunctory supervision over the business even

though they were aware that the reports submitted to them by [the co-investor] were incomplete.

[E]ven assuming a conspiracy between [the co-investor and the banker], ..., the plaintiffs still could not recover because they utterly failed to take reasonable steps to protect themselves as required by Georgia law, even though there were no inhibitions to investigation. The Georgia law protects the diligent, but is not the constant guardian of the supine. Here even an iota of economic curiosity on the part of the investors could have secured the stable before the horse galloped out....

*Id.* at 98–99.

The Fifth Circuit did not discuss the "confidential relationship" exception to the duty to exercise diligence to protect against fraud despite the apparent existence of a fiduciary relationship, and thus is arguable authority for the proposition that no such exception exists under Georgia law. Nonetheless, this court cannot ignore *Crosby, Johnson,* and *Harrison,* which clearly establish such an exception. The court declines to follow the literal implications of *Hannah,* assuming that the Fifth Circuit was either unaware of the *Cross-Johnson-Harrison* line of cases or was not persuaded that a partnership relationship existed between the plaintiffs and the defendant co-investor.[1]

Finding that negligence or lack of diligence is not an affirmative defense for fiduciary fraud, the court now turns to the issue of whether a fiduciary relationship must exist between the allegedly defrauded party and *each* defendant named in a conspiracy to defraud or with just one of the alleged conspirators. The court answers this question in the negative. The Wy-Tex defendants cite no case suggesting that a defrauded party must show a confidential

relationship with each of the alleged conspirators to invoke the "confidential relationship exception." *Cf. Simpson v. Georgia State Bank,* 159 Ga.App. 310, 283 S.E.2d 278 (1981) (where claim is against defendants as independent tortfeasors, plaintiff must prove a confidential relationship with each tortfeasor). As each conspirator is liable for the acts done by his or her co-conspirators, there is no justification for not invoking the "confidential relationship exception" against all the alleged conspirators where one of the alleged conspirators had a confidential relationship with the allegedly defrauded party.

In sum, the court holds that negligence or lack of diligence is not an affirmative defense to a conspiracy to defraud claim where one of the alleged conspirators had a confidential relationship with the allegedly defrauded party. There being no dispute that Stauffer and Alimenta had a fiduciary relationship, the effect of this holding is that the Wy-Tex defendants will not be allowed to assert this defense at the trial of this case.

This ruling, however, does not dispose of the Wy-Tex defendants' argument that certain evidence of Alimenta's negligence and lack of diligence is admissible because it is relevant for a purpose unrelated to such an affirmative defense. The court reaches that argument next.

B. *Relevancy of evidence showing that "any damage suffered by Alimenta resulted from Alimenta's alleged negligence in failing to review and monitor properly the transactions involved in this action, in failing to supervise the activities of defendant Larry Stauffer, and in failing to keep adequate business records."*

██ Based on its conclusions in section A, *supra,* the court finds that the evidence

---

**1.** The *Hannah* court, in support of its holding, quoted from a concurring opinion entered by the undersigned judge while he was sitting on the Georgia Court of Appeals. 436 F.2d at 99 ("'in seeking to choose between a fraud feasor and a negligent party, the Georgia law unfortunately goes with the alleged crook.' *Cole v. Cates,* 113 Ga.App. 540, 545, 149 S.E.2d 165,

169."). The undersigned judge has not changed his view of Georgia law, rather the *Hannah* court misapplied that view if it in fact consciously ignored a fiduciary relationship; *Cole v. Cates* did not involve a fiduciary relationship, but an arms-length transaction, in which case Georgia law does go with the "alleged crook."

which Alimenta attempts to exclude is inadmissible for the purpose of establishing a "contributory negligence" defense to the conspiracy to defraud claim.

However, evidence of Alimenta's operating procedures and business records is admissible on relevancy grounds for the purpose of establishing that the occurrences in question "were not the result of an intentional conspiracy, but were the result of (1) sloppy paperwork unilaterally performed by Mr. Stauffer, or (2) sloppy bookkeeping, file practices performed internally at Alimenta, which led to Alimenta's inability to keep up with the accurate dates of their contracts, the proper filing of confirming contracts, the amounts shipped pursuant to contracts, the proper allocation of amounts shipped to the contracts in question and to an overall inability at Alimenta to ship in a timely manner." (Wy-Tex defendants' response, pp. 6–7). Alimenta admits as much in its reply brief, when it says it is not seeking to bar the introduction of evidence to prove that Alimenta's records contain mistaken contract dates, prices, quantities, or "the like." (Alimenta's reply in support of motion in limine, p. 14).

The court, accordingly, declines to exclude, on relevancy grounds, the broad categories of evidence sought to be excluded by Alimenta, but limits the introduction of that evidence for the above-stated purpose. The court now turns to Alimenta's arguments for exclusion under the Federal Rules of Evidence.

C. *Admissibility of the Price Waterhouse report under Fed.R.Evid. 407*

■ Alimenta alternatively seeks to exclude the Price Waterhouse report under Rule 407 of the Federal Rules of Evidence, which provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event....

The Price Waterhouse report, says Alimenta, is a "subsequent remedial measure" which falls under this evidentiary rule.

The Wy-Tex defendants respond that, not only is the report not a "subsequent remedial measure" taken by Alimenta, it is "offered for another purpose" unrelated to proving Alimenta's negligence and admissible under the stated exception to the rule:

This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The "other purposes" identified by the Wy-Tex defendants are: (1) to demonstrate conditions existing at the time of the events in question; (2) to disprove Alimenta's claim of "fraudulent concealment" and show "feasibility of repair"; (3) to show Alimenta's control over Stauffer's actions and rebut Alimenta's allegation that Stauffer was a "secret agent" of the Wy-Tex defendants; and (4) to show Alimenta's failure to exercise due care.

The court rejects the Wy-Tex defendants' arguments and finds that the Price Waterhouse report is excludable under Fed.R. Evid. 407. The report is a "subsequent remedial measure" taken by Alimenta as it was prepared at the request of Alimenta's president for the purpose of improving the procedures and controls relating to Alimenta's transaction systems following Stauffer's departure from Alimenta. The report does not demonstrate the conditions existing at the time of the transactions in question as it was prepared two months *after* Stauffer's departure, nor does the report show that Stauffer was not a "secret agent" of the Wy-Tex defendants. As for offering the report to disprove Alimenta's claim of "fraudulent concealment" and show "feasibility of repair," feasibility of repair is not at issue in this case. Finally, the report is not admissible to show "failure to exercise due care" as such a purpose is expressly prohibited by Rule 407.

**D.** *Admissibility of Price Waterhouse report under Fed.R.Evid. 403*

■ While the court need not reach Alimenta's argument for exclusion of the Price Waterhouse report under Rule 403 of the Federal Rules of Evidence in light of its ruling above, the court offers Rule 403 as an alternative justification for exclusion of the report. That rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Alimenta argues, and the court agrees, that the probative value of the Price Waterhouse report, assuming there is any, is substantially outweighed by the prejudice to Alimenta that would result from the "lengthy 'official' looking document," the confusion of the issues that would result from placing undue emphasis on Alimenta's accounting and other business practices, the undue delay that would result from the need to call expert witnesses to explain the technical language of the report, and the presentation of cumulative evidence that would result from introducing the report in addition to the testimony of the author of the report.

Thus, the Price Waterhouse report is excludable under Rule 403 as well as under Rule 407.

**CONCLUSION**

In sum, the court PARTIALLY GRANTS AND PARTIALLY DENIES Alimenta's motion in limine as follows:

(1) the Price Waterhouse report will be excluded at trial and no reference to the report will be allowed;

(2) all evidence *for the sole purpose* of establishing a "contributory negligence" defense to the conspiracy to defraud claim will be excluded at trial, including:

a. evidence that Alimenta should have discovered and prevented Stauf-

fer's conflicts of interest and breaches of fiduciary duty;

b. evidence that Alimenta knew or should have known that existing controls were being circumvented or ignored;

c. evidence of the feasibility of additional controls which might have caused Stauffer's malfeasance to be discovered earlier;

d. evidence that Alimenta failed "to utilize reasonable business practices";

e. evidence of a warning to Alimenta's president that Alimenta was experiencing large losses in trading cottonseed commodities; and

f. evidence that Alimenta's president learned, while Stauffer was at Alimenta, that Stauffer had left his previous employer's paperwork "in a mess";

(3) all evidence which arguably establishes an alternative explanation for the circumstantial evidence used by Alimenta to show a conspiracy to defraud will be allowed. (In the court's view, items a. through f., above do not fall within this category of evidence.)